UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DUPLICATION MANAGEMENT INCORPORATED,**    Chapter 7
    Debtor    Case No. 10-17015-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the First and Final Application Seeking Approval of Compensation for Fees and Reimbursement of Expenses filed by Attorney Thomas O. Bean ("Attorney Bean") and his firm Verrill Dana LLP (the "Firm"). Michael E. Jenoski ("Jenoski"), the former principal of Duplication Management Incorporated (the "Debtor") filed an Objection. The Court heard the Application and the Objection on March 25, 2014 and took the matter under advisement.

The issues presented include: 1) whether, despite authorization to employ the Firm on a contingency basis, the Court should award the Firm compensation different from the compensation provided in the employment application because the Firm has established that the "terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions," *see* 11 U.S.C. § 328(a); and 2) whether the Court should add to the amount subject to the 33⅓% contingency the amounts that the Trustee potentially could have recovered from the Jenoski and others, or the value of the waiver of any claims under 11 U.S.C. 502(h) of certain defendants in an adversary

1

proceeding commenced by the Chapter 7 Trustee.

The material facts necessary to resolve the issues are not in dispute and none of the parties requested an evidentiary hearing. Accordingly, the Court finds and rules as follows.

## II. BACKGROUND AND POSITIONS OF THE PARTIES

On June 28, 2010, an involuntary Chapter 7 petition was filed against the Debtor. An order for relief was entered on September 3, 2010, and Lynne F. Riley, Esq. was appointed the Chapter 7 Trustee (the "Trustee").

The Court established January 19, 2011 as a bar date for filing proofs of claims. Over one year later, on March 22, 2012, the Trustee filed an Application for Order Authorizing Chapter 7 Trustee to Employ Special Counsel. Through her Application, the Trustee sought permission to retain Attorney Bean and the Firm pursuant to 11 U.S.C. §§ 328(a), 330 and 331 as special counsel to represent the bankruptcy estate in certain avoidance and recovery actions against Countrywide Financial Services and any of its successors and/or assigns, and against Jenoski, DMI, Inc. and/or Goodway Graphics, Inc. The Trustee represented that the Firm was qualified to perform services for the bankruptcy estate, that its employment would be in the best interest of this bankruptcy estate, and that neither Attorney Bean nor the Firm represented any interests adverse to the estate. The Trustee sought authority to employ the Firm on a contingency basis, such that the Firm would receive "33⅓% of any recovery, plus all costs and expenses," adding that "[t]he Firm will seek compensation based upon such agreement and this Application, subject to the approval of this court upon appropriate application therefore."

Following its retention, the Firm filed three adversary complaints on behalf of the Trustee:

1) Lynne F. Riley, Trustee v. Countrywide Home Loans, Inc., Adv. Pro. No. 12-1149 (the "Bank Proceeding"), 2) Lynne F. Riley, Trustee, v. DMI, Inc., Michael E. Jenoski, Anna Jenoski, and Goodway Graphics of Massachusetts, Inc., Adv. Pro. No. 12-1144 (the "Jenoski Proceeding"), and 3) Lynne F. Riley v. BAC Home Loan Servicing, LLP., Adv. Pro. No. 12-01223. The Firm on behalf of the Trustee dismissed the adversary proceeding against BAC Home Loan Servicing, LLP, without prejudice, and caused the Trustee's claims against BAC Home Loan Servicing, LLP to be consolidated with the Trustee's claims against Countrywide Home Loans, Inc., at the Banks' request, such that the defendants in the Bank Proceeding ultimately were Countrywide Home Loans, Inc., and Bank of America, N.A. (collectively, the "Bank defendants"). Through her complaints against the Bank defendants, the Trustee sought to recover, under federal and state fraudulent conveyance law, and under state common law, hundreds of thousands of dollars in mortgage payments made by the Debtor to the defendant Banks with respect to a loan granted to the Debtor's President and sole shareholder, Jenoski, and his wife Anna, secured by a mortgage on their vacation home in Meredith, New Hampshire.

On November 4, 2013, this Court issued a Memorandum indicating its intent to enter judgment in favor of the Trustee and against the Bank defendants as follows:

> [T]he Court shall enter summary judgment in favor of the Trustee on all counts of her Second Amended Complaint. The Court determines that the Plaintiff is entitled to prejudgment interest as requested in Counts I and II pursuant to Mass. Gen. Laws ch. 231, § 6C and prejudgment interest as requested for Counts IV and VI pursuant to Mass. Gen. Laws ch. 231, § 6B. Entitlement to postjudgment interest for Counts III and V are subsumed in the award of postjudgment interest under Counts IV and VI.

Riley v. Countrywide Home Loans, Inc. (In re Duplication Mgmt., Inc.), 501 B.R. 462, 491 (Bankr.

D. Mass. 2013).[1] On November 19, 2013, the Court entered final judgment in favor of the Trustee.[2]

---

[1] The counts were as follows:

Count I against Countrywide Home Loans, Inc., for unjust enrichment in the amount of $397,361.11, plus prejudgment interest at the rate of 12% per annum from and after the date of the filing of the Complaint commencing this action, i.e., June 13, 2012, to the date of entry of judgment, pursuant to Mass. Gen. Laws ch. 231, § 6C;

Count II against Countrywide Home Loans, Inc., for money had and received in the amount of $397,361.11, plus prejudgment interest at the rate of 12 % per annum from and after June 13, 2012, to the date of entry of judgment, pursuant to Mass. Gen. Laws ch. 231, § 6C;

Count III against Countrywide Home Loans, Inc., for fraudulent conveyances under 11 U.S.C. § 548, in the amount of $85,205.73, plus prejudgment interest under 28 U.S.C. § 1961(a) from and after June 13, 2012 to the date of entry of judgment;

Count IV against Countrywide Home Loans, Inc., for fraudulent conveyances under 11 U.S.C. § 544(a)(1) and Mass. Gen. Laws ch. 109A, § 6, in the amount of $287,040.50, plus prejudgment interest at the rate of 12% per annum from June 12, 2012 to the date of entry of judgment pursuant to Mass. Gen. Laws ch. 231, § 6C;

Count V, for fraudulent conveyances under 11 U.S.C. § 548(a)(1), against Bank of America, N.A., in the amount of $105,221.18, plus prejudgment interest from June 13, 2012 under 28 U.S.C. § 1961(a) from June 13, 2012 to the date of entry of judgment; and

Count VI, for fraudulent conveyances under 11 U.S.C. § 544(a)(1) and Mass. Gen. Laws ch. 109A, § 6, against Bank of America, N.A., in the amount of $105,221.18, plus prejudgment interest at the rate of 12% per annum from June 12, 2012 to the date of entry of judgment pursuant to Mass. Gen. Laws ch. 231, § 6C.

Id. at 464-65.

[2] Default judgments were entered against the Jenoskis, and the Trustee settled her claims against Goodway Graphics of Massachusetts, Inc. for $6,345.

The Bank defendants filed notices of appeal as did the Trustee.

On January 2, 2014, the Trustee filed a Motion to Approve Settlement Agreement with the Bank defendants setting forth the Bank defendants' agreement to pay the Trustee $800,000.00 within twenty days after approval of the settlement, as well as the parties' agreement to provide releases to each other. Following expiration of the applicable notice period, the Court, on January 24, 2014, granted the Trustee's Motion and approved the settlement. On March 24, 2014, the Trustee and the Bank defendants stipulated to the dismissal of the appeals in the consolidated adversary proceeding.

On February 21, 2014, the Firm filed a First and Final Application Seeking Approval of Compensation for Fees and Reimbursement of Expenses in which it stated that it was seeking approval of compensation, not based on the contingency agreement percentage, but "based on the lodestar." Thus, the Firm sought compensation for attorneys' fees in the amount of $381,164 and for reimbursement of expenses in the amount of $9,600, for a total final award of $390,764.

In the alternative to compensation based upon the lodestar, the Firm requested the following:

> [an] award . . . [of] . . . a contingent fee based on the recoveries by the Firm "for the benefit of the estate" – including the benefit realized from the Banks' waiver of its section 502(h) claims – for total compensation of $365,860.09, plus reimbursement for actual and necessary costs and disbursements of $9,500 [sic], for a total award of $375,360.09.[3]

As another alternative, the Firm requested compensation based upon 33⅓% of an amount that

---

[3] The First and Final Application contains a discrepancy as to the amount of fees sought. In some instances the amount is set forth as $9,500 and in others as $9,600.

included, not only the settlement amount of $800,000 from the Bank defendants and the settlement amount of $6,345 received from Goodway Graphics of Massachusetts, Inc., but the projected recovery from the Jenoskis in the adversary proceeding she commenced against them, DMI, Inc. and Goodway Graphics of Massachusetts, Inc., although the Trustee informally abandoned the claims against DMI, Inc. and the Jenoskis.

The Firm contended that the abandonment of the claims against the Jenoskis,[4] as well as the outcome of the litigations against the Bank defendants which will enable the Trustee to pay creditors in full with interest, were circumstances not capable of being anticipated when the engagement was agreed upon and approved by this Court. The Firm sought total compensation under its second alternative to the lodestar of $385,450, plus reimbursement for actual and necessary costs and disbursements of $9,600, for a total award of $395,050 under that approach.

Jenoski filed a Limited Objection to the Firm's First and Final Application in which he stated that settlement of the litigation generated $806,345, a sum sufficient to pay all administrative expenses and all claims of all creditors in full with interest, with money left over and that the 33⅓% contingency would compensate the Firm for its services in the sum of $268,781.66.

The Petitioning Creditors filed a Statement in Support of the Firm's First and Final Application, observing that "[i]t is an exception - rather than the norm - that an involuntary case that started out as a purported no-asset case ended in the result attained by Mr. Bean and his colleagues at the Verrill Dana firm," adding that the Jenoskis were able to finance their lifestyle

---

[4] The Trustee has not filed a Notice of Abandonment, although the Firm represented that it had been instructed by the Trustee not to pursue claims against the Jenoskis.

6

on "the backs of DMI's creditors."[5] They pointed out that they were not compensated in full as they remained liable for attorneys' fees and costs of collection prior to the bankruptcy.

At the March 5, 2014 hearing, Attorney Bean explained his contention that the Firm should be compensated due to the Bank defendants' waiver of their claims under 11 U.S.C. § 502(h), stating:

> we calculated if the banks had filed that claim for $469,000 this would have been a 63-cent case rather than a 100-cent case. So we believe we're entitled to -- if we're going under the first sentence of 328(a), one-third of 63 percent of $469,000.

In addition, at the hearing, counsel to the U.S. trustee indicated that the U.S. trustee did not support of a transition from a contingency fee agreement to application of the lodestar or hourly rates "because this is a contingency fee agreement," adding that the U.S. trustee was not opposed to the inclusion of a potential recovery from the Jenoskis in the contingent fee calculation. Counsel to the U.S. trustee also observed that the reason the U.S. trustee asks trustees and attorneys who enter into contingency fee agreements to include a reference to 11 U.S.C. §§ 330 and 331 in employment applications is to protect the estate in the event that the contingent fee award is out of proportion to the time expended - - the opposite of what happened in the instant case. She indicated that the U.S. trustee always wishes to reserve the right to argue that fees are excessive.

Following the hearing, the Trustee filed an affidavit in which she stated:

---

[5] At the hearing, Attorney Bean characterized Jenoski's argument as follows:

> [It] is like that old saw, the child who kills his parents and then asks for mercy because he's an orphan. Mr. Jenoski created the problems here. He's the one -- he and his wife are the ones living beyond their means on the backs of the debtor . . . .

7

> Based upon Mr. Bean's extraordinary efforts, exceptional results, and surplus status of this estate - - resulting in the termination of the pursuit of claims against DMI and Mr. and Mrs. Jenoski, I support allowance of the Fee Application based on his and his firm's hourly fees. Alternatively, the unusual and unanticipated situation whereby the pursuit of legitimate claims were terminated, resulting in no recovery or corresponding contingency fee to compensate Attorney Bean for those efforts, were not anticipated at the time this Court approved Attorney Bean's retention.

The Trustee also stated that counsel to the U.S. trustee requested that the Employment Application "specifically provide that Attorney Bean was being retained pursuant to sections 330 and 331, in addition to section 328."

The Firm argues that, because the Trustee in her Application for Order Authorizing Trustee to Employ Special Counsel sought "to retain . . . [the Firm] . . . pursuant to sections 328, 330 and 331 of the Bankruptcy Code," the Court approved its retention expressly subject to a section 330 review for reasonableness and that "the reference in the retention application to the Firm being paid one-third of any recovery pursuant to section 328(a) is immaterial to this Court's award of fees." In the alternative, the Firm posits that because the Court can award compensation *less* than what would result under a contingent fee agreement, the Court has authority to award *more* that what would result under such an agreement, adding that the Court can consider circumstances that could not have been anticipated at the time of retention. The Firm also states its belief that when it was retained Xerox Corporation might have filed a late proof of claim in an amount of more than $1.3 million, which would have vastly increased the total of unsecured claims, thus reducing the potential dividend,[6] that it believed at the time it was retained that it

---

[6] The Firm notes that Xerox Corporation entered into a confidential settlement with the Jenoskis in which it agreed not to file a proof of claim in the Debtor's case.

8

was going to be required to prosecute the proceeding against the Bank defendants, as well as the proceeding against the Jenoskis, DMI, Inc. and Goodway Graphics of Massachusetts, Inc., to conclusion, to provide the greatest possible dividend to unsecured creditors, and that it undertook the engagement based on that expectation.

Jenoski, while admitting that the Firm did an excellent job and noting the absence of controlling authority in the First Circuit, relies upon <u>ASARCO, L.L.C. v. Barclays Capital Inc, (In re ASARCO, L.L.C.)</u>, 702 F.3d 250, 258 (5th Cir. 2012), to the effect that § 328 creates a "high hurdle." It rejects the Firm's contentions that the contingency fee agreement should be altered.

### III. DISCUSSION

Section 328(a) provides in pertinent part the following:

> The trustee . . .with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions *prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.*

11 U.S.C. § 328(a) (emphasis supplied). Section 330 provides in pertinent part the following:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a . . . a professional person employed under section 327 or 1103–
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Based upon the foregoing sections of the Bankruptcy Code, the Firm must establish that it could not have foreseen that it would be as successful as it was against the Bank defendants because the Trustee's decision to abandon her claims against the Jenoskis and DMI, Inc. was directly tied to the unanticipated success of the litigation in which the Trustee avoided the mortgage payments made by the Debtor to the Bank defendants. In other words, due to the successful outcome of the litigation with the Bank defendants, the Trustee, recognizing the futility of pursuing claims against the Jenoskis when it became apparent that all creditors will be paid in full with interest, instructed the Firm to cease its pursuit of the estate's claims against other defendants in the adversary proceedings commenced by the Firm.

Based upon the arguments presented, as well as the legal standards applicable to awards of compensation under § 328 in this Court's decision in In re High Voltage Eng'g Corp., 311 B.R. 320 (Bankr. D. Mass. 2004), the Court rejects the Firm's arguments. *See also* ASARCO, L.L.C. v. Barclays Capital, Inc. (In re ASARCO, L.L.C.), 702 F.3d 250, 257-58 (5th Cir. 2012) (citing, *inter alia* In re Smart World Techs., LLC, 552 F.3d 228, 234–35 (2d Cir. 2009); Daniels v. Barron (In re Barron, 325 F.3d 690, 693 (95th Cir. 2003)). This Court finds persuasive the decision in ASARCO in which the Fifth Circuit determined that "Congress enacted § 328(a) to eliminate the previous uncertainty associated with professional compensation in bankruptcy proceedings, even at the risk of potentially underpaying, or, conversely, providing a windfall to, professionals retained by the estate under § 328(a)." 702 F.3d at 258.

With respect to the Firm's argument that the Bank defendants' § 502(h) claims should be considered as part of any recovery subject to the contingent fee, the court in In re Best Products

10

Co., Inc., 168 B.R. 35 (Bankr. S.D.N.Y. 1994), *appeal dismissed,* 177 B.R. 791 (S.D.N.Y. 1995), *aff'd,* 68 F.3d 26 (2nd Cir. 1995), examined section 502(h) in detail, stating the following:

> Section 502(h) of the Bankruptcy Code provides that the claim of a creditor arising from the recovery of property under section 550, among others, shall be allowed or disallowed the same as if the claim had arisen prepetition. And section 502(d), much like section 57(g) of the former Bankruptcy Act, disallows the claim of any recipient of a fraudulent transfer unless the recipient has paid the amount or turned over any property for which it is liable under section 550. Thus, there is an implication in section 550 that a transferee of a fraudulent transfer will have a claim when the transfer is disgorged.
>
> This is not to say that every person who is the recipient of a fraudulent transfer is entitled to a claim against the estate. *For if the transferee gave no consideration for the transfer, there is no underlying debt.*

Id. at 56 (emphasis supplied).  The court added that § 502(h) is predicated on the principle "that when a fraudulent transfer is avoided, the parties are restored to their previous positions." Id. at 57 ( citations omitted). *See also* Tronox, Inc. v. Kerr McGee Corp. (In re Tronox Inc.), 503 B.R. 239 (Bankr. S.D.N.Y. 2013) ("§ 502(h) does not create a 'claim arising from the recovery of property' under § 550 and merely provides that any such claim is a prepetition claim entitled to a share of recovery from the estate on the same basis as all other prepetition claims").  When the parties are restored to their previous positions, it is clear that the Bank defendants have no claim against the Debtor.

In view of the decisions referenced above, the Court concludes that the waiver by the Bank defendants of their § 502(h) claims had no value.  The Bank defendants simply were not, and cannot be by virtue of § 502(h), creditors of the Debtor's bankruptcy estate where they provided no consideration to the Debtor for the mortgage or the payments.

The Court also concludes that the Firm's contention with respect to the Trustee's claims

against the Jenoskis and DMI, Inc. also fails. The assertion that the Trustee could recover $350,000 from DMI, the Banks and the Jenoskis is without sufficient credible evidentiary support. Although the Trustee could have obtained judgment against them, and, although she maintains that they had sufficient monies to make a significant payment to the Trustee, the Court concludes that any recovery is speculative. In view of the Xerox Corporation claim against Jenoski and the likelihood that the Bank defendants will continue to pursue the Jenoskis with respect to their third party claims against them in Adv. P. No. 12-1149, the Court concludes that any theoretical recovery against the Jenoskis or DMI, Inc. cannot form the basis of an increased contingency claim for compensation as it is not a "recovery" within the meaning of the Application for Order Authorizing Chapter 7 Trustee to Employ Special Counsel. The Firm submitted no persuasive authority for such an approach.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order allowing the Firm compensation in the sum of $268,781.66 plus costs in the sum of $9,284.25.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 7, 2014